J-S02024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
         :          PENNSYLVANIA
         :
       v.              :
         :
         :
SAMMIE CAMPBELL          :
         :
       Appellant        :    No. 2834 EDA 2024

Appeal from the PCRA Order Entered September 24, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013197-2008

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY MURRAY, J.:           **FILED MARCH 11, 2026**

Sammie Campbell (Appellant) appeals from the order dismissing his

third Post Conviction Relief Act (PCRA)[1] petition as untimely filed. After careful

review, we affirm.

A prior panel of this Court summarized the relevant factual and

procedural history as follows:

> [On September 12, 2007, Appellant], along with his co-
> conspirators Markeem Vicks [(Vicks)] and Maurice Wilkerson
> [(Wilkerson)], were involved in two related shooting battles
> between rival gangs in South Philadelphia.
>
> The first of these ("the Mifflin Street shooting") occurred
> around 3:00 p.m. on the 400 and 500 blocks of Mifflin Street, a
> quiet residential block. Later that evening, [Appellant] and his co-
> conspirators took part in a second gunfight that occurred on or
> around the 500 block of Moore Street ("the Moore Street
> shooting"). The second gun battle targeted Anthony Alonzo Reid

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[(Reid or the victim)], who suffered multiple near-fatal gunshot wounds. [Appellant was subsequently arrested and charged, in two separate cases, with multiple offenses related to both the Moore Street shooting and the Mifflin Street shooting.]

In 2010, [Appellant] was convicted of attempted murder and related charges [following a consolidated] non-jury trial. That conviction was [subsequently] vacated, and the case was remanded for a new trial, following PCRA litigation in which [Appellant] alleged that trial counsel was ineffective for failing to investigate or present Erlene Muirhead [(Muirhead), Appellant's] girlfriend, as an alibi witness.

In between [Appellant's] original 2010 trial and his retrial in 2015, the victim, Reid, was killed in another shooting. Additionally, Wilkerson and Vicks pled guilty to their roles in the Moore Street shooting and admitted that they participated in a conspiracy together with [Appellant] to attack Reid.

In 2015, represented by new counsel, [Appellant] was retried … [by] a jury. At that trial, the Commonwealth presented the testimony of Wilkerson and Vicks, including their guilty pleas. Reid's testimony from the 2010 trial was read into the record, as Reid was unavailable to testify in person due to his death. [During trial, Appellant] called Muirhead as an alibi witness.

On December 15, 2015, the jury convicted [Appellant] of attempted murder, criminal conspiracy, and possession of an instrument of crime, relating to the Moore Street shooting, which targeted Reid. [Appellant] was acquitted of all charges relat[ed] to the Mifflin Street shooting. [On February 24, 2016, the trial court imposed an aggregate sentence of 22½ to 45 years' imprisonment.]

[Appellant] filed a timely direct appeal raising three claims: (1) that the trial court erred in expressing skepticism toward Vicks' testimony; (2) that the prosecutor committed misconduct in cross-examining Muirhead about why she failed to come forward as an alibi witness immediately [after Appellant's arrest]; and (3) that the trial court abused its discretion by admitting [into evidence] two recorded prison conversations involving Wilkerson.

The Superior Court rejected all three of [Appellant's] claims as meritless and affirmed the judgment of sentence.

> ***Commonwealth v. Campbell***, 179 A.3d 600, [996 EDA 2016] (Pa. Super. 2017) [(unpublished memorandum)]. The Pennsylvania Supreme Court denied [Appellant's] petition for allowance of appeal on August 6, 2018.[2]

***Commonwealth v. Campbell***, 301 A.3d 878, 578 EDA 2022 (Pa. Super. 2023) (unpublished memorandum at 1-3) (footnote added; some original brackets omitted).

The PCRA court detailed the ensuing PCRA history in its Pa.R.A.P. 1925(a) opinion:

> Appellant initiated PCRA proceedings [by filing a *pro se* petition] on September 15, 2018.[3]  [PCRA] counsel … was appointed to represent [Appellant].  After conducting an independent review of the record and determining that there were no meritorious issues to be raised, [PCRA] counsel filed a no-merit [letter] and petition to withdraw pursuant to ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) [(*en banc*)].  On May 20, 2019, after reviewing the ***Finley*** letter, issuing notice of its intent to dismiss [Appellant's petition without a hearing pursuant to Pa.R.Crim.P.] 907, and considering Appellant's *pro se* responses to both the ***Finley*** letter and the 907 notice, [the PCRA c]ourt formally dismissed the PCRA petition [and granted PCRA counsel's petition to withdraw].  No [] appeal was filed.
>
> On April 16, 2019, Appellant filed a [*pro se*] Petition Seeking Post-Conviction Relief Pursuant to 42 Pa.C.S.A. § 9541, *et seq.* On September 6, 2019, [Appellant] filed a *pro se* document titled First Amended Petition Seeking Post-Conviction Relief Pursuant to 42 Pa.C.S.A. § 9541, *et seq.*  Both [of these] filings were deemed

---

[2] Appellant did not file a petition for writ of *certiorari* in the United States Supreme Court.

[3] Although Appellant did not title his filing as a PCRA petition, the PCRA court properly construed it as such.  ***See Commonwealth v. Jackson***, 30 A.3d 516, 521 (Pa. Super. 2011) (observing that this Court has "repeatedly held that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition." (citation and ellipses omitted)).

to be timely PCRA petitions, since [Appellant] had until November 4, 2019[,] to file a timely PCRA claim for relief.[4]  Both filing[s] raised claims of [trial] counsel's ineffectiveness, and the September filing add[ed] a "miscarriage of justice" claim.  On December 11, 2019, Appellant filed a [*pro se*] document titled Second Amended Petition Seeking Post-Conviction Relief Pursuant to 42 Pa.C.S.A. § 9541, *et seq.*

Privately retained counsel, David K. Lehman, Esquire, entered his appearance on [Appellant's behalf on] September 1, 2020.  On September 7, 2021, [Attorney Lehman] filed another Amended PCRA Petition raising the following claims: (1) trial counsel was ineffective for failing to request a mistrial due to the prosecution's belated disclosure of evidence concerning [] Muirhead and Officer Nancy Morley; (2) the trial court erred in permitting [Appellant's] two cases to be joined for trial; (3) trial counsel was ineffective for failing to object to the admission of [] Wilkerson and [] Vicks' guilty pleas at trial; and (4) the jury's verdict was "an affront to the incontrovertible physical facts doctrine[.]" (Amended Petition, 9/7/21, p. 7).

PCRA Court Opinion, 3/24/25, at 3-4 (footnotes added; footnote in original and italics omitted; some citations modified).

On February 15, 2022, following the issuance of appropriate notice pursuant to Pa.R.Crim.P. 907, the PCRA court denied Appellant's second PCRA petition.  Appellant timely filed a *pro se* notice of appeal.  On appeal, Appellant raised various claims of his trial and PCRA counsel's ineffectiveness.  **See Campbell**, 301 A.3d 878 (unpublished memorandum at 6-7).  Relevant to the instant appeal, Appellant asserted trial counsel was ineffective for failing to (1) impeach Philadelphia Police Department Detective Edward Tolliver

_____

[4] **See** 42 Pa.C.S.A. § 9545(b)(1) (providing that all PCRA petitions, "including a second or subsequent petition," must "be filed within one year of the date" that the petitioner's judgment of sentence becomes final).

(Detective Tolliver), one of the police investigators involved in the instant case who testified at trial; and (2) request the trial court to issue the jury a cautionary instruction, and/or declare a mistrial, based upon the admission of the respective guilty pleas of Wilkerson and Vicks into evidence. *Id.* at 6-7.

Regarding the former claim, Appellant asserted trial counsel should have impeached Detective Tolliver with the detective's purported misconduct in another, unrelated criminal case against Appellant.[5] *Id.* at 24-25. This Court addressed Appellant's claim as follows:

> On December 8, 2022, [Appellant] filed with this Court an application for remand in which he recasts his claim regarding Detective Tolliver as a violation of *Brady v. Maryland*, 373 U.S. 83 … (1963),[6] due to the Commonwealth's suppressing

---

[5] Specifically, Appellant referenced CP-51-CR-9469-2008 (Case 9469). *See* Application for Stay and Remand Back to PCRA Court (578 EDA 2022), 12/8/22, at 3. Case 9469 concerned an unrelated shooting in Philadelphia on June 17, 2007 (the Rose/Dove shooting), wherein Lawrence Rose was shot and killed, and Jamal Dove (Dove) was also shot but survived. Police charged Appellant related to the Rose/Dove shooting. Notably, it is undisputed that Detective Tolliver was involved in the Rose/Dove shooting investigation, and the instant investigation into the Mifflin/Moore Street shootings. In Case 9469 (the Rose/Dove shooting), the first trial ended with hung jury. Upon retrial, Appellant entered a negotiated guilty plea, in January 2013, to third-degree murder and aggravated assault. The trial court imposed an aggregate sentence of 12½ to 25 years' imprisonment in Case 9469. Appellant did not file a direct appeal. However, Appellant filed a PCRA petition in Case 9469, which he attached as an exhibit to his PCRA petition in the instant appeal. PCRA Petition, 3/25/24, Ex. E; *see also id.* at 4 (Appellant asserting that his PCRA petition in Case 9469 was pending a ruling by the Honorable Scott DiClaudio (Judge DiClaudio)).

[6] In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

*(Footnote Continued Next Page)*

information about Detective Tolliver in [Appellant's] unrelated case[, Case 9469]. According to [Appellant], even though he pled guilty [in Case 9469], evidence of Detective Tolliver's supposed dishonesty and bias toward him in that case would have been important impeachment evidence in this case.

[Appellant] has failed to establish any basis for remand. It appears that [Appellant] knew of [Detective Tolliver's] alleged misconduct as early as 2015 and, therefore[,] could have raised it in his first PCRA petition. More fundamentally, [Appellant] provides no evidence to support his claim that the detective invented a nonexisten[t] witness in [Appellant's] other case. Thus, we deny [Appellant's] motion for remand.

*Campbell*, 301 A.3d 878 (unpublished memorandum at 25-26) (footnote added).

Additionally, this Court concluded that the PCRA court properly denied relief on Appellant's claim of trial counsel's ineffectiveness for not requesting a cautionary instruction regarding the testimony of Wilkerson and Vicks, based, in relevant part, upon the PCRA court's following reasoning in its opinion:

[A]ny error in the absence of a cautionary instruction was harmless because there was considerable other evidence of [Appellant's] guilt. Before his death, [Reid] gave a police statement in which he identified [Appellant] by name as one of the three men who shot him on the night of September 12, 2007. He also identified [Appellant's] photograph as being that of one of the men who shot him and explained the motive of the crime to police. Gihad Topping [(Topping)], Reid's friend, also witnessed the shooting and identified [Appellant], by both name and picture, to police as one of the perpetrators. Topping told police that [Appellant] was "from 7th Street," that they had had prior violent

_____

irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

altercations, and that he had known [Appellant] "for about three years."

      This was a case in which [Appellant] was identified by multiple eyewitnesses, including the victim, as one of the shooters. The witnesses knew [Appellant] by name, and their accounts were consistent across multiple details, such as the make and color of Wilkerson's burgundy Chevy Impala, [Reid] having been told to "take his fucking hands out of his pockets" before the shooting, and the fact that Wilkerson drove away after this interaction, then returned in a different vehicle with his co-conspirators to shoot at Reid. Any error concerning the lack of a cautionary instruction was therefore harmless. ***See Commonwealth v. Boyer***, 856 A.2d [149,] 155 [(Pa. Super. 2004)] (although it was error to admit a co-defendant's guilty plea without a cautionary instruction, that error was harmless, where there was a proper basis for admitting the plea and the other evidence of guilt was overwhelming). Under the totality of the circumstances, it is apparent that the lack of a cautionary instruction regarding the jury's consideration of the co-conspirators' guilty pleas was not prejudicial. Because [Appellant] could not have been prejudiced by trial counsel's inaction, this argument fails.

***Campbell***, 301 A.3d 878 (unpublished memorandum at 15-16) (quoting PCRA Court Opinion, 5/19/22, at 17-18); ***see also id.*** (unpublished memorandum at 17) (holding Wilkerson and Vicks' respective "guilty pleas were properly admitted as substantive evidence of [Appellant's] participation in the conspiracy to shoot Reid." (citation omitted)).

On March 25, 2024, Appellant filed the instant PCRA petition, his third, through newly-retained PCRA counsel, Jerome M. Brown, Esquire (current PCRA counsel).[7] Therein, current PCRA counsel stated that he had requested

_____

[7] Current PCRA counsel also represents Appellant on appeal.

and received "open file" discovery of the Philadelphia County District Attorney's Office's (DAO) file related to Appellant's case.[8]  PCRA Petition, 3/25/24, at 4.  In the PCRA petition, current PCRA counsel asserted his investigation had uncovered several pieces of newly-discovered evidence that undermined confidence in the verdicts.  *See id.* at 6-15.

Initially, Appellant claimed that he had discovered new, exculpatory evidence that he was

> targeted by Detective [] Tolliver…, who was responsible for bringing charges [against Appellant in the instant] two cases[,] as well as in an unrelated homicide[, *i.e.*, Case 9469].  Indeed, evidence in [Case 9469] reflects that Detective Tolliver was so motivated to charge [Appellant] that he made up a fictitious nurse/witness to help ensure a guilty verdict [in Case 9469].[9] [C]ase [9469] is now the subject of a PCRA Petition before … Judge DiClaudio.

*Id.* at 4 (footnote added; original footnote and internal citation omitted).

_____

[8] Significantly, at no point did current PCRA counsel clarify when he requested or received Appellant's DAO file.  *See generally* PCRA Petition, 3/25/24. Appellant likewise fails to clarify this matter in his appellate brief.  *See generally* Appellant's Brief.

[9] Appellant claimed that while Dove was recovering in the hospital following the Rose/Dove shooting, Detective Tolliver came to Dove's room in the intensive care unit (ICU) to question Dove about the Rose/Dove shooting.  *See* PCRA Petition, 3/25/24, at 9.  According to Appellant, in Case 9469, Detective Tolliver "made up testimony about a nurse signing a statement [with regard to Dove, so that Detective Tolliver] could obtain testimony from a hospitalized witness…."  PCRA Petition, 3/25/24, at 25; *see also id.* at 10 (asserting that even though this purported misconduct occurred in an unrelated case against Appellant, it evidence that "Detective Tolliver was willing to fabricate the identity of a person just to 'get' [Appellant,]" and was thus relevant to the instant case).

In support of his claim of Detective Tolliver's misconduct, Appellant attached to his PCRA petition several exhibits which, he asserted, contained new and exculpatory information, including, *inter alia*:

(1) A copy of Appellant's PCRA petition filed in Case 9469, which detailed Appellant's claims of Detective Tolliver's purported misconduct in that case in interviewing Dove in the ICU. ***Id.***, Ex. E; and

(2) An article excerpt from the Philadelphia Inquirer that described a civil suit (the White case) filed by Reuben White (White), who levied allegations of police misconduct against a number of Philadelphia police detectives and officers, including Detective Tolliver. ***Id.***, Ex. C (article excerpt).

Appellant further asserted that he had recently obtained new, exculpatory evidence, in the form of an affidavit dated March 30, 2023, from Ikim Graham (Graham). ***Id.*** at 6-7. Graham, one of Appellant's fellow inmates at the State Correctional Institution – Huntingdon, alleged he was an eyewitness to the Moore Street shooting. ***Id.*** In Graham's affidavit, he asserted (1) "[Appellant] is not one of the 2 shooters I saw on the night of the shooting"; and (2) Detective Tolliver had attempted to coerce Graham, during the police investigation regarding the shootings, into falsely inculpating Appellant in the crimes. ***Id.*** Ex. B.

Appellant also claimed he recently had "uncovered an email chain between … the prosecutor during [Appellant's] retrial" and her supervisor, dated October 30, 2014, which contained the prosecutor's impressions of one

of the eyewitnesses to the Mifflin Street shooting,[10] off-duty Philadelphia Police Officer Christine Valentine (Officer Valentine). *Id.* at 10-11; Ex. F (Oct. 30, 2014, email).

Appellant further claimed that his "recent" review of his DAO file revealed information that the victim, prior to his death, was "wanted" by police in connection with a murder investigation. *Id.* at 11-12; Exhibit G (DAO internal notes). Appellant asserted "[t]he fact that the victim had open firearm charges and was wanted for murder was not know[n to Appellant] until the uncovering of this document," and it "creates multiple avenues of defense that were denied to [Appellant]." *Id.* at 12.

Finally, Appellant alleged the Commonwealth's failure to disclose the above-mentioned evidence to the defense violated *Brady*. *See* PCRA Petition, 3/25/24, at 28-31.

On July 30, 2024, the Commonwealth filed a response to Appellant's PCRA petition. On August 19, 2024, the PCRA court issued a Rule 907 Notice upon Appellant, announcing the court's intention to dismiss his petition without an evidentiary hearing.[11]

_____

[10] We reiterate that Appellant was acquitted of all charges related to the Mifflin Street shooting.

[11] On September 4, 2024, Appellant, while represented by current PCRA counsel, filed a *pro se* Motion for Extension of Time in which to respond to the Rule 907 Notice. The PCRA court issued no ruling on Appellant's motion. *See*, *e.g.*, *Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010) ("There is no
*(Footnote Continued Next Page)*

- 10 -

On September 24, 2024, the PCRA court entered its order dismissing Appellant's third PCRA petition. On October 18, 2024, Appellant timely filed a notice of appeal through current PCRA counsel.[12] On December 9, 2024, current PCRA counsel filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors on appeal on Appellant's behalf.[13] The PCRA court subsequently issued its Rule 1925(a) opinion, concluding: "Because the instant petition is untimely on its face, and … [Appellant] fails to meet any of the [PCRA's timeliness] exceptions …, this court has no authority to entertain his petition." PCRA Court Opinion, 3/24/25, at 22; *see also id.* at 6

_____

constitutional right to hybrid representation either at trial or on appeal. A defendant may not confuse and overburden the court by his own *pro se* filings of briefs at the same time his counsel is filing briefs on his behalf." (citation, brackets, and ellipses omitted)). Thus, as Appellant concedes, he "never filed a [r]esponse to [the Rule] 907 Notice[.]" Appellant's Brief at 7. However, on September 9, 2024, Appellant, through current PCRA counsel, filed untimely "Objections" to the Rule 907 Notice.

[12] On October 24, 2024, Appellant, acting *pro se*, filed a duplicative notice of appeal. This Court subsequently discontinued Appellant's separate appeal, upon current PCRA counsel's application to withdraw the appeal. Order (2926 EDA 2024), 12/2/24.

[13] On January 10, 2025, Appellant filed a *pro se* Application to Supplement Statement of Errors Complained of on Appeal. However, because Appellant was represented by counsel at the time of filing his *pro se* Application, and hybrid representation is prohibited, his *pro se* filing was a "legal nullity" and we do not consider the claims he raised therein. *See Ali*, 10 A.3d at 293 (holding that because appellant was represented by counsel, "his *pro se*[ ]Rule 1925(b) statement was a legal nullity."); *see also* PCRA Court Opinion, 3/24/25, at 7 n.5 (PCRA court noting that Appellant's *pro se* Application "was immediately copied and sent to" current PCRA counsel).

- 11 -

(observing that Appellant's "'after-discovered' witness [] Graham, is now deceased").

## Issues

Appellant presents seven issues for our review:

1) Where there was evidence that the lead detective in this case[, *i.e.*, Detective Tolliver,] had committed misconduct in a related case involving [Appellant,] at a similar location where the underlying case occurred, did the [PCRA] court err in not holding a hearing based upon this misconduct?

2) Where there was other evidence that [Detective Tolliver] committed misconduct, did this constitute a pattern and practice of misconduct which should have compelled an evidentiary hearing in the [PCRA] court?

3) Where there was evidence uncovered that a Commonwealth witness's identification was "Very Very shaky," and this fact was not disclosed to the defense, was it error to not hold a hearing on this evidence?

4) When there was evidence uncovered that the victim in this case was wanted for murder and this evidence was suppressed, reflecting that there may have been an alternative suspect in this case, did the [PCRA] court err in not holding a hearing on this claim?

5) Where the cumulative effect of the suppression of evidence and the uncovering of the new facts are accumulated, did this provide another basis which should have compelled the [PCRA] court to hold a hearing?

6) Where there is new evidence uncovered after the filing of the notice of appeal, should this [C]ourt grant a hearing to address those new matters including the vacating of the sentence?

7) Where there were genuine issues of material fact, did the [PCRA] court err in dismissing the PCRA petition without a hearing?

Appellant's Brief at 2-3 (issues reordered; some punctuation modified).

## Standard of Review/Timeliness

When reviewing the dismissal of a PCRA petition, we examine whether the determination of the PCRA court is supported by the record and free of legal error. ***Commonwealth v. Drummond***, 285 A.3d 625, 633 (Pa. 2022). "We consider the record in the light most favorable to the prevailing party at the PCRA level, and grant great deference to the PCRA court's findings that are supported in the record." ***Commonwealth v. Kapellusch***, 323 A.3d 837, 844 (Pa. Super. 2024) (citation and internal quotation marks omitted). "We review the legal conclusions *de novo*, but the PCRA court's credibility determinations, when supported by the record, are binding." ***Commonwealth v. Rizor***, 304 A.3d 1034, 1051 (Pa. 2023). Further, a PCRA petitioner bears "the burden of persuading th[e appellate c]ourt that the PCRA court erred and that such error requires relief." ***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019).

Under the PCRA, all petitions must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review." ***Id.*** § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. ***Commonwealth v. Albrecht***, 994 A.2d 1091, 1093 (Pa. 2010); ***see also Commonwealth v. Chester***, 895 A.2d 520, 522 (Pa. 2006) ("If a PCRA

petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." (citation omitted)).

Here, because Appellant did not petition the United States Supreme Court for further review following our Supreme Court's August 6, 2018, order denying allowance of appeal, his judgment of sentence became final on November 4, 2018. **See** 42 Pa.C.S.A. § 9545(b)(3); **see also** U.S. Sᴜᴘ. Cᴛ. R. 13 (providing a petition for writ of *certiorari* must be filed within 90 days after the entry of the order denying discretionary review). Accordingly, Appellant's instant PCRA petition is facially untimely. **See** PCRA Petition, 3/25/24, at 15 (Appellant conceding, "the time for filing a first PCRA [petition] has long since passed.").

Nevertheless, Pennsylvania courts may consider an untimely PCRA petition if the petitioner explicitly pleads and proves one of the three exceptions to the PCRA's time limitation set forth in 42 Pa.C.S.A. § 9545(b)(1)(i-iii). These exceptions provide that a PCRA petition may be filed when the petition alleges, and the petitioner proves

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 14 -

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.*

Significantly, the "petitioner bears the burden of proving the applicability of one of the [timeliness] exceptions." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017). "Whether a petitioner has carried his burden is a threshold inquiry that must be resolved prior to considering the merits of any claim." *Commonwealth v. Mickeals*, 335 A.3d 13, 20 (Pa. Super. 2025) (citation omitted).

Furthermore, any petition attempting to invoke one of the timeliness exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). It is settled that a PCRA petitioner "must explain when he first learned of the facts underlying his PCRA claims and show that he brought his claim within" the one-year time requirement of subsection 9545(b)(2). *Commonwealth v. Williams*, 35 A.3d 44, 53 (Pa. Super. 2011). Our Supreme Court has held that where a petitioner "does not explain **when** he first learned of the facts underlying his PCRA claims, he has failed to meet his burden of showing he brought his claim within" the time period required by subsection 9545(b)(2). *Albrecht*, 994 A.2d at 1094 (footnote omitted; emphasis added). Furthermore, "[a]ll of the time limits set forth in the PCRA are jurisdictional and must be strictly construed." *Williams*, 35 A.3d at 53.

Instantly, in his PCRA petition, Appellant invokes the timeliness exceptions for newly-discovered facts, and governmental interference, set forth in 42 Pa.C.S.A. § 9545(b)(1)(i) and (ii), respectively. *See* PCRA Petition, 3/25/24, at 15-16.[14]

To establish the newly-discovered fact exception, the petitioner bears the burden of pleading and proving "(1) the facts upon which the claim was predicated were unknown[;] and (2) they could not have been ascertained by the exercise of due diligence." *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (citation omitted). The focus of the newly-discovered fact exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Lopez*, 249 A.3d 993, 1000 (Pa. 2021) (citation, emphasis, and footnote omitted). Regarding due diligence, we have stated that "due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that

_____

[14] In his lengthy PCRA petition, Appellant makes a solitary reference to the governmental interference timeliness exception contained in subsection 9545(b)(1)(i). *See* PCRA Petition, 3/25/24, at 15 (asserting, without elaboration, that evidence of Detective Tolliver's "misconduct comprises government interference under 42 Pa.C.S.A. § 9545(b)(1)(i)" (citation modified)). However, Appellant only invoked the governmental interference exception with respect to his claim of Detective Tolliver's misconduct. *See generally id.* Accordingly, aside from Appellant's claims related to Detective Tolliver, we will confine our review of Appellant's numerous issues on appeal to his petition's invocation of the "newly-discovered fact" timeliness exception, set forth in subsection 9545(b)(1)(ii).

may support a claim for collateral relief." ***Commonwealth v. Burton***, 121 A.3d 1063, 1071 (Pa. Super. 2015) (*en banc*); ***see also Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) ("Due diligence demands that the petitioner take reasonable steps to protect his own interests." (citation omitted)).

Our Supreme Court has instructed that "the newly discovered fact exception does not require any merits analysis of the underlying claim, and application of the time-bar exception therefore does not necessitate proof of the elements of a claim of after-discovered evidence." ***Commonwealth v. Small***, 238 A.3d 1267, 1286 (Pa. 2020) (citation and internal quotation marks omitted); ***see also Commonwealth v. Branthafer***, 315 A.3d 113, 128 (Pa. Super. 2024) (noting that "the newly-discovered facts exception to the jurisdictional time-bar is distinct from an after-discovered evidence claim, which is a substantive basis for relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)([vi])"[15]).  "Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim." ***Commonwealth v. Reeves***, 296 A.3d 1228, 1232 (Pa. Super. 2023).

### Appellant's Argument

_____

[15] Subsection 9543(a)(2)(vi) provides that to be entitled to PCRA relief, a petitioner must establish, by a preponderance of the evidence, that the conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi).

In his first issue, Appellant argues the PCRA court erred in rejecting his claim related to the newly-discovered fact of Detective Tolliver's misconduct in Appellant's unrelated case, Case 9469. *See* Appellant's Brief at 18-24. According to Appellant, the

> most significant claims in this case involve Detective [] Tolliver. The overriding theme in the PCRA … court below was that [Detective Tolliver] had a vendetta against [Appellant] and would do anything and everything he could to get [Appellant], whether legal or not.

*Id.* at 18-19. Appellant refers to the evidence he asserted in his PCRA petition, described *supra*, concerning Detective Tolliver's alleged misconduct in Case 9469, *i.e.*, manufacturing the signature of a non-existent ICU nurse. *Id.* at 19. Appellant points out that in the instant case, Reid's inculpatory police "statement was also taken in an ICU[.]" *Id.*; *see also id.* at 21 ("[T]he Dove statement was taken under circumstances similar to that of [] Reid[,] who testified that he did not remember giving" police any statement in the ICU). Appellant maintains that although he "is cognizant that [Detective Tolliver's] misconduct was not in **this** case, it involved the same detective and the same defendant." *Id.* at 24 (emphasis in original). Appellant also argues that the Commonwealth withheld this evidence of Detective Tolliver's misconduct, in violation of **Brady**, **supra**. *Id.* at 25.

Furthermore, Appellant alleges that after the filing of the PCRA court's Rule 1925(a) opinion in the instant appeal, in Case 9469, Judge DiClaudio conducted a PCRA hearing on May 12, 2025 (discussed *infra*), wherein

Appellant was the only witness. *Id.* at 23. Appellant attached to his appellate brief a copy of the transcript from that proceeding. *Id.*, Ex. B; *see also id.*, Ex. C (excerpt from the docket in Case 9469). According to Appellant, Judge DiClaudio granted him PCRA relief and vacated his sentence in Case 9469. *Id.* at 23. Appellant claims that in Case 9469, after his sentence was vacated, the Commonwealth

> offered Appellant, who had [originally] pled guilty to third-degree murder and aggravated assault, a plea to concurrent counts of aggravated assault with an aggregate sentence of 4-8 years, down from the 12-25 years previously imposed.

*Id.* (citing Ex. C).

As noted above, in his PCRA petition, Appellant also briefly invoked the governmental interference timeliness exception set forth in subsection 9545(b)(1)(i), but only as to his claim of Detective Tolliver's misconduct. *See* PCRA Petition, 3/25/24, at 15. Our Supreme Court has explained that

> [a]lthough a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence.

*Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008); *see also Commonwealth v. Smith*, 17 A.3d 873, 887 (Pa. 2011) (detailing the elements a defendant bears the burden of proving to establish a *Brady* violation). "The proper question with respect to [the governmental interference] timeliness exception is whether the government interfered with [the a]ppellant's ability to present his claim and whether [the a]ppellant was

duly diligent in seeking the facts on which his claims are based."
***Commonwealth v. Chimenti***, 218 A.3d 963, 975 (Pa. Super. 2019) (citation and internal quotation marks omitted).

Instantly, in connection with Appellant's appeal of the denial of his second PCRA petition, he asserted the Commonwealth committed a ***Brady*** violation in allegedly suppressing evidence of Detective Tolliver's misconduct. ***Campbell***, 301 A.3d 878 (unpublished memorandum at 25); ***see also id.*** (noting Appellant's assertion that "even though he pled guilty [in Case 9469], evidence of Detective Tolliver's supposed dishonesty and bias toward him in [Case 9469] would have been important impeachment evidence in this case."). This Court concluded that "[**Appellant**] **knew of** [**Detective Tolliver's**] **alleged misconduct as early as 2015 and, therefore**[**,**] **could have raised it in his first PCRA petition.**" ***Id.*** (emphasis added). Because Appellant failed to raise his claim within one year of discovering Detective Tolliver's alleged misconduct, he cannot establish the PCRA's timeliness exceptions for newly-discovered facts and governmental interference. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(i) and (ii).

Even if Appellant had established a PCRA timeliness exception related to Detective Tolliver's misconduct in Case 9469, Appellant would not be entitled to relief under the PCRA. To be eligible for PCRA relief, the petitioner must show that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). "An issue has been previously litigated

if the highest appellate court in which the petitioner could have had review has ruled on the merits of the issue or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence." ***Commonwealth v. Carpenter***, 725 A.2d 154, 160 (Pa. 1999) (citing 42 Pa.C.S.A. § 9544(a)(2) and (3)). Further, our Supreme Court has stated that "a PCRA petitioner cannot obtain review of claims that were previously litigated by presenting new theories of relief … to relitigate previously litigated claims." ***Commonwealth v. Bond***, 819 A.2d 33, 39 (Pa. 2002).

Accordingly, because this Court previously considered and rejected this issue, Appellant's present claim is not cognizable as being previously litigated. ***See*** 42 Pa.C.S.A. § 9543(a)(3); ***Carpenter***, 725 A.2d at 160.

Moreover, as the PCRA court observed in its opinion, evidence related to Detective Tolliver's questioning of Dove at the ICU in Case 9469,

> certainly is not material to **this** matter, which does not involve Dove's hospital interview at all. In short, Appellant has not articulated any cognizable claim for why his allegations against Detective Tolliver in connection with the Rose/Dove shooting should entitle him to PCRA relief in this matter. Absent any indication that Detective Tolliver committed some material wrongdoing that tainted the evidence and affected the outcome in **this** case, Appellant is not entitled to relief in this case. Appellant cannot rely on his own accusations relating to an entirely separate shooting, which have not been accepted as fact by any legal forum,[16] as the basis for a valid PCRA claim here.

_____

[16] On appeal, Appellant relies upon Judge DiClaudio's filings in Case 9469, issued **after** the PCRA court in the instant matter filed its Rule 1925(a) opinion. However, those filings do not entitle Appellant to relief in this matter. Our review discloses that none of the filings in Case 9469 were originally

*(Footnote Continued Next Page)*

included in the certified record for the instant appeal; rather, Appellant merely attached to his appellate brief copies of (1) the docket in Case 9469; and (2) the transcript from the May 12, 2025, PCRA hearing before Judge DiClaudio in Case 9469. Appellant's Brief at Exs. B & C. "It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal." ***Commonwealth v. Bracalielly***, 658 A.2d 755, 763 (Pa. 1995); ***Commonwealth v. Holley***, 945 A.2d 241, 246 (Pa. Super. 2008) ("[F]or purposes of appellate review, what is not of record does not exist …[, and] copying material and attaching it to a brief does not make it a part of the certified record." (internal citations omitted)). Thus, here, Appellant's attachments to his brief related to filings in Case 9469 cannot be considered as supplements to the certified record. ***Holley***, ***supra***.

Nevertheless, in an abundance of caution, this Court requested and obtained copies of the relevant filings in Case 9469, including the transcript from the May 12, 2025, hearing before Judge DiClaudio. ***See*** Supplemental Record (Case 9469), filed 2/24/26. At that hearing, Judge DiClaudio, after reviewing the respective signatures of Detective Tolliver and the purported ICU nurse he allegedly spoke with regarding Dove, found as follows concerning the signature of the ICU nurse: "I'm not going to say that Detective Tolliver did it, [*i.e.*, signed the purported nurse's signature,] I'm going to say that there was no nurse who said it. So, I accept that part of [Appellant's] argument." N.T. (Case 9469), 5/12/25, at 23; ***see also id.*** at 56 (Judge DiClaudio stating, regarding the hospital "statement that [Dove] supposedly gave, [the court is] going to find that [Dove] didn't give [that statement].").

The record in Case 9469 further reflects that, on June 12, 2025, Judge DiClaudio (1) granted Appellant PCRA relief; (2) vacated his judgment of sentence; (3) permitted him to withdraw his original guilty pleas and enter new guilty pleas to, *inter alia*, two counts of aggravated assault; (4) resentenced Appellant to an aggregate 4-8 years' imprisonment, to run concurrently with any other sentence Appellant is serving; and (5) ordered Appellant's immediate release on parole in that case based on time served. ***See*** Supplemental Record (Case 9469), filed 2/24/26. However, **the record does not reflect the basis of Judge DiClaudio's ruling**, and, in Case 9469, **Appellant alleged an additional basis upon which he was entitled to PCRA relief**, which was wholly unrelated to Detective Tolliver. ***See*** Supplemental Amended PCRA Petition (Case 9469), 6/24/25, at 19-28; ***see also*** Commonwealth Brief at 16 (asserting, in the instant appeal, "it appears that Judge DiClaudio ultimately granted relief in [Case 9469] for a different reason" unrelated to Detective Tolliver), and ***id.*** at 17 n.9 (summarizing Judge

*(Footnote Continued Next Page)*

- 22 -

PCRA Court Opinion, 3/24/25, at 15 (emphasis in original; footnote added; paragraph break omitted).

Upon review, the PCRA court's findings are supported by the record, and we agree with its determination. Appellant has offered no evidence that Detective Tolliver engaged in misconduct while investigating the instant case, which bears no connection to the Rose/Dove shooting. Further, Appellant fails to identify which, if any, aspects of Detective Tolliver's testimony at his jury trial were false. Appellant's claim that Detective Tolliver allegedly engaged in police misconduct in other unrelated cases, even if true, is not sufficient to establish that Detective Tolliver engaged in misconduct in the instant case. **See Reeves**, 296 A.3d at 1232, 1233 (holding that newspaper articles referencing misconduct by police officers in matters unrelated to the PCRA petitioner's case "are insufficient to establish a newly-discovered fact

_____

DiClaudio's statements at the PCRA hearing in Case 9469 pertaining to Appellant's other claim).

We are persuaded by the Commonwealth's argument in the instant case that "[Appellant] does not articulate how Judge DiClaudio's decision in [Appellant's] unrelated case constitutes a valid exception to the PCRA's 1-year time limit in **this** case, let alone constitutes a basis for relief. [Appellant] argues simply that Judge DiClaudio's later grant of relief in [Case 9469] means that [Appellant's] accusations of [Detective Tolliver's] misconduct in [the instant] case are no longer unsubstantiated." **Id.** at 15-16 (emphasis in original). We are also persuaded by the Commonwealth's claim that because Appellant was the only witness at the May 12, 2025, hearing, "Judge DiClaudio could not plausibly have actually found that Detective Tolliver[,] in fact[,] committed the misconduct [that Appellant] attributed to him." **Id.** at 16 n.8 (emphasis omitted).

exception," and emphasizing that Reeves "cites no new information in **his** case." (emphasis in original)).

Based upon the foregoing, Appellant's first issue fails to establish any time-bar exception, and is not cognizable under the PCRA.

In his second issue, Appellant argues the PCRA court should have granted relief based on the other evidence he advanced in his PCRA petition that, he asserts, demonstrated Detective Tolliver's "pattern" of misconduct. *See* Appellant's Brief at 25-34. Specifically, Appellant references (1) the unrelated civil suit in the White case,[17] *id.* at 26-27; and (2) the allegations that Graham made in his above-described affidavit. *Id.* at 27-31; *see also* PCRA Petition, 3/25/24, at 6-8, Exs. B & C. Regarding the former point, Appellant asserts that "what happened in the [] White case [] aligns with the sort of misconduct that has been seen in all of [Detective] Tolliver['s] cases

_____

[17] In its Rule 1925(a) opinion, the PCRA court explained the allegations levied in the White case:

> In the White case, three witnesses who gave statements implicating White in the murder of 17-year-old Naasir Westbrook claimed that they had given those statements to police only after being detained for lengthy periods of time. Witness Ernest Davis claimed that he was pressured by Detectives Micah Spotwood, [] Tolliver, Nathaniel Williams, and James Griffin into identifying White as a suspect. William Truxton, who owned the car believed to have been used in the drive-by shooting that killed Westbrook, complained that that he had been held in custody for thirty (30) hours by Detectives Tolliver and Williams, and was also pressured into implicating White.

PCRA Court Opinion, 3/24/25, at 10-11.

which involve [Appellant]." Appellant's Reply Brief at 6. According to Appellant, "[t]he accumulation of this evidence would have likely compelled a different verdict[,] as it showed a pattern and practice of misconduct by Detective Tolliver. Further, had the jury learned of this pattern, it likely would have resulted in a different verdict." Appellant's Brief at 34.

Initially, Appellant's PCRA petition, and appellate brief, fail to identify the date Appellant discovered the information regarding the White case. By failing to plead **when** he first learned of the alleged facts regarding the White case, Appellant "has failed to meet his burden of showing he brought his claim within" the time period required by subsection 9545(b)(2). **Albrecht**, 994 A.2d at 1094 (footnote omitted); 42 Pa.C.S.A. § 9545(b)(2).

Moreover, Appellant fails to discuss whether he engaged in reasonable efforts to ascertain the facts related to the White case, and, if so, what those efforts entailed. The excerpted online article Appellant attached to his PCRA petition states the information on that webpage was "last updated: 5/7/2021[,]" PCRA Petition, 3/25/24, Ex. C, and Appellant offers no explanation regarding why he could not have discovered this information sooner, with the exercise of due diligence. **See Cox**, 146 A.3d at 227. Indeed, in connection with Appellant's appeal of the denial of his second PCRA petition, Appellant attached to one of his *pro se* filings in this Court a copy of the civil complaint from the White case. **See** Application for Stay and Remand Back to PCRA Court (578 EDA 2022), 12/8/22, Ex. 5; **see also id.** at 7-8 (Appellant

asserting that he first learned about the news article detailing the White case from another inmate "in February of 2022").

In **Commonwealth v. Davis**, 326 A.3d 455, 1187 EDA 2023 (Pa. Super. 2024) (unpublished memorandum),[18] this Court addressed a PCRA petitioner's nearly-identical claim of newly-discovered facts based on the White case. In **Davis**, we observed that "[f]or purposes of the newly-discovered fact exception, our Supreme Court has ruled that mere allegations of police misconduct in unrelated cases, whether true or false, do not constitute new facts under the PCRA." **Id.** (unpublished memorandum at 10) (citing **Commonwealth v. Castro**, 93 A.3d 818, 825-27 (Pa. 2014)). The **Davis** Court ultimately concluded that

> the allegations of police misconduct asserted by White in his complaint do not constitute "evidence," as they are mere allegations. **See** [**Castro**, 93 A.3d] at 826 (noting that "[s]peculation is no more valuable than allegation"). Moreover, the allegations in White's complaint of misconduct by Detectives Spotwood, Tolliver, Williams, and Griffin[,] in matters **unrelated** to Davis's case[,] constitute inadmissible hearsay which cannot qualify as a newly-discovered fact. **See Abu-Jamal**, 941 A.2d at 1269. Thus, as [the PCRA petitioner] failed to present the PCRA court with any newly-discovered fact in his case, he failed to overcome the untimeliness of his petition.

**Davis**, **supra** (unpublished memorandum at 11) (emphasis in original).

Likewise, instantly, we conclude that Appellant's invocation of the article related to the White case, which he first learned about in February 2022, does

---

[18] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. **See** Pa.R.A.P. 126(b).

not establish the newly-discovered fact exception to overcome the untimeliness of Appellant's petition. *Id.*

We next turn to Appellant's invocation of Graham's March 30, 2023, affidavit, in which Graham asserted (1) he observed the Moore Street shooting; (2) Appellant was not involved; and (3) Detective Tolliver employed improper methods when interviewing Graham about the shooting, and coerced Graham into giving a false statement. *See* PCRA Petition, 3/25/24, Ex. B. Appellant maintains that "[w]hile [Graham] died, [in his affidavit,] he reiterated the same claims as in the White case" and asserted that Detective Tolliver committed police misconduct when interviewing Graham in connection with the Moore Street shooting. Appellant's Brief at 27-28.

We determine that Graham's affidavit failed to establish any time-bar exception. As the PCRA court observed in its Rule 1925(a) opinion, Graham's affidavit

> is moot because [] Graham is deceased. The credibility of [] Graham cannot be evaluated because he is dead, and that fact will not change. Nonetheless, Appellant asserted that he only became aware of [] Graham's information in March of 2023, and neither he nor trial counsel had been aware of [] Graham as a potential witness at the time of trial. [] Graham's testimonial credibility is central to determining whether Appellant would be entitled to a time[-]bar exception, and whether [he] would be entitled to any substantive relief[.] Since no determination of credibility had been done prior to [] Graham's passing, this argument fails.

PCRA Court Opinion, 3/24/25, at 10. We agree with the PCRA court's reasoning and determination.

Based on the foregoing, Appellant's second issue fails to establish any time-bar exception to overcome the untimeliness of his PCRA petition.

In his third issue, Appellant contends the PCRA court erred in denying relief on his claim related to the email that the prosecutor in his case sent, in October 2014, regarding Officer Valentine (the Valentine email). *See* Appellant's Brief at 35-42. Appellant emphasizes the following excerpt from the Valentine email:

> PO Valentine (who ID'd [Appellant] as the shooter in the 3:30 incident[, *i.e.*, the Mifflin Street shooting]) made the ID from down the block and is VERY VERY shaky /insecure / difficult to elicit testimony from her… but again, I can still work with it…. Just something to consider … like she is not rock-solid.

*Id.* at 35 (quoting Valentine email – PCRA Petition, 3/25/24, Ex. F). Despite these concerns, Appellant claims that the prosecutor "presented [Officer] Valentine's [trial] testimony as anything but suspect, stating in opening [arguments] that [Officer Valentine] saw [Appellant] 'exactly opposite her on this narrow-small Philadelphia Street.'" *Id.* (quoting N.T., 12/8/15, at 27);[19] *see also id.* at 36 (alleging this characterization in opening arguments "was the anthesis of what Officer Valentine stated to [the prosecutor] in a prep session"). Appellant asserts that at trial, the prosecutor "elicited testimony from [Officer] Valentine that [she] was 'one hundred percent' sure that [Appellant] was the man out there shooting a gun." *Id.* at 35 (quoting N.T.,

---

[19] The trial transcript is not contained within the certified record.

12/10/15, at 34). According to Appellant, the Valentine email "should have been supplied to the defense, not hidden, as it "is the essence of **Brady** material[.]" Appellant's Brief at 35-36. Finally, Appellant concedes that he was acquitted of the charges associated with the Mifflin Street shooting, but claims it "is impossible to quantify the prejudice" he suffered from the absence of the Valentine email, "[g]iven the fact that [the Mifflin Street shooting and Moore Street shooting] cases were tried together." **Id.** at 40.

Upon review, we conclude Appellant's claim fails to meet the requirements of the newly-discovered fact exception. Initially, Appellant fails to identify, either in his PCRA petition or appellate brief, when he obtained evidence of the Valentine email. **See**, **e.g.**, PCRA Petition, 3/25/24, at 10 (current PCRA counsel stating that he discovered the Valentine email during counsel's "review of [Appellant's DAO] files," but failing to explain when that review occurred); **see also** Appellant's Brief at 35-42. Accordingly, Appellant failed to carry his burden of proving that he discovered the facts he relied upon within one year of the date his claim could have been presented. **See Albrecht**, 994 A.2d at 1094; **Spotz**, 171 A.3d at 678; 42 Pa.C.S.A. § 9545(b)(2). Moreover, Appellant offers no explanation as to why he could not have discovered the Valentine email information sooner, with the exercise of due diligence. **See Cox**, 146 A.3d at 227.

Nevertheless, even if Appellant had established a timeliness exception related to the Valentine email, we would conclude that his claim warrants no relief, based upon the PCRA court's following reasoning:

The fact that Officer Valentine may have had some reservations about her safety testifying in court because she lived in the neighborhood[, *i.e.*, of the Mifflin Street shooting,] and might have been "difficult to elicit testimony from," does not mean that her identification of Appellant had been inaccurate. <u>The [Valentine] email indicates that Officer Valentine was somewhat reluctant to testify, and not that she was unable to identify the person she had observed.</u> Officer Valentine's reluctance to testify is not surprising, given that she witnessed an extraordinarily violent shooting in which Appellant allegedly grabbed a female bystander, who was unloading groceries at the time, and used [this bystander] as a human shield while firing at his target.

At the time that she saw the shooting, Officer Valentine was in her home, which was on the same block. [Officer Valentine] testified that she paid closer attention to Appellant than to the other shooter because Appellant was holding her neighbor hostage, and that [Officer Valentine] was "[o]ne hundred percent" certain of her identification "because I had to stare at him the whole time, he was holding my neighbor. I had to stare at him, and I still see him." (N.T., 12/10/15, pp. 12, 17-18, 34).

Officer Valentine's testimony indicates that she had a clear view of Appellant, and ample motive to study his appearance, but that she was fully aware of how unscrupulous he could be in his violence. The fact that Officer Valentine was described [in the Valentine email] as "shaky" and "insecure," read in context with the rest of the record, plainly relates to these factors and not to doubts about the accuracy of her identification. To the contrary, Officer Valentine testified that she saw Appellant well enough to note that he was clean-shaven and wore glasses at the time of the Mifflin Street shooting but was no longer clean-shaven at the time of trial. (*Id.*, pp. 17-18, 22). [Officer Valentine] was also candid that she did not recognize the other people involved in the shooting and could not identify them. (*Id.*, pp. 21-22).

It was not [improper] for the prosecutor to argue that Officer Valentine was "one hundred percent" certain of her

identification when that was the exact wording that [Officer Valentine] used to describe her confidence in the identification. (*Id.*, p. 34). Because that was the witness's precise phrasing, the prosecutor was entitled to refer to the testimony of record in her closing argument.

Moreover, as Appellant acknowledges, he was **acquitted** of all charges relating to the Mifflin Street shooting. Thus, even if there were some improprieties in the prosecutor's argument, the error would be harmless beyond a reasonable doubt, given that Appellant was not convicted of any charges [related to the Mifflin Street shooting]. He is therefore not entitled to PCRA relief on this claim.

PCRA Court Opinion, 3/24/25, at 16-17 (underline emphasis added; bold emphasis in original; some citations and punctuation modified).

Our review discloses that the PCRA court's reasoning is supported by the record, and we agree with its determination. Based on the foregoing, Appellant's third issue entitles him to no relief.

In his fourth issue, Appellant claims that, during current PCRA counsel's review of Appellant's DAO file, counsel "uncovered material which demonstrated that [] Reid had an open weapon[]s case" and "was wanted for a homicide." Appellant's Brief at 42. Appellant contends the Commonwealth failed to disclose this information to the defense, in violation of **Brady**. **See id.** at 42-45. According to Appellant, "evidence that Reid was wanted for murder would have shown that someone harbored bad blood towards him." *Id.* at 43. Appellant speculates that "[i]f Reid was wanted for a murder …, then the person or persons who shot him could well be retaliating" against Reid, and the perpetrator was "not [Appellant]." *Id.* at 42. Appellant asserts

that the Commonwealth's "failure to provide evidence of alternative suspects is particularly prejudicial." *Id.* at 43. Finally, Appellant claims this evidence "was neither cumulative nor impeaching," and "since it provided evidence of an alternative suspect,[20] it would have likely resulted in a different result at trial." *Id.* at 45 (footnote added).

Initially, Appellant alleged no date, in either his PCRA petition or appellate brief, regarding when he first learned of the information pertaining to Reid's purported status as a wanted criminal. Accordingly, Appellant failed to carry his burden of proving that he discovered the facts he relied upon within one year of when he filed his PCRA petition. *See Spotz*, 171 A.3d at 678; *Albrecht*, 994 A.2d at 1094; 42 Pa.C.S.A. § 9545(b)(2). Moreover, Appellant offers no explanation as to why he could not have discovered this information sooner, with the exercise of due diligence. *See Cox*, 146 A.3d at 227.

Moreover, the PCRA court opined this claim also fails on its merits, reasoning as follows:

> [Appellant's] speculation [regarding *Brady* evidence related to Reid and his purported criminal conduct] falls far short of establishing a valid basis for PCRA relief. First, **Appellant's claim is premised not on a criminal extract, court docket, or other official document verifying that Reid was in fact "wanted for a homicide" during the investigation of this case, but on the trial prosecutor's** <u>private notes</u>**.** Notes that **do not**

---

[20] Aside from his speculation that the perpetrators "could have been Wilkerson and Vick," Appellant does not identify the alleged alternative suspects. Appellant's Brief at 42.

**specify a timeframe** for either Reid's [firearms possession] case or the homicide for which he was allegedly wanted, nor do they contain any further details about either case. It is therefore impossible to ascertain whether these notes are accurate, or whether these incidents existed prior to the 2007 Moore Street shooting or Reid's statement to police. Obviously, if the notes referred to matters that arose after 2007, they would not relate to any potential avenues for investigation.

PCRA Court Opinion, 3/24/25, at 17-18 (emphasis added).

The PCRA court continued:

Even assuming *arguendo* that [the prosecutor's] private notes were accurate, and that they pertained to charges or potential charges that existed prior to 2007, **they would not contain any new leads beyond those already known to the defense.** [] Reid's criminal extract was passed to the defense in advance of trial and was entered as a court exhibit in 2015, at which point *all* of Reid's criminal history would have been known, since Reid had been murdered years earlier. (N.T., 12/8/15, pp. 17-18; Commonwealth Exhibit 53). Thus, **the defense had been fully appr[]ised of Reid's actual criminal history, and Appellant's claim fails for that reason alone. Reid's criminal record was not concealed from the defense.**

At Appellant's first trial in 2010, Reid was alive and was called to testify. At that time, he denied seeing that Appellant shot him and disavowed the police statement in which he had previously identified Appellant as one of the shooters. For this reason, Appellant's argument fails. Reid did not testify that Appellant shot him and attempted to disavow his prior statement to the contrary. Obviously, Reid did not strike "some deal with Detective Tolliver for his testimony" (PCRA Petition, [3/25/24], p. 12), since Reid's trial testimony was that he never saw who shot him.

Furthermore, in 2010, Reid was questioned regarding the fact that he was on probation for possession of a controlled substance with intent to deliver at the time that he testified. (N.T., 12/8/15, vol. 2, pp. 43-45). The jury – both at the 2010 trial and when the notes of testimony from that proceeding were read into the record at the 2015 trial – was aware of Reid's potential interest in ingratiating himself with law enforcement by

cooperating, and of his activity as a drug dealer. They were also aware[] that Reid was not cooperating with police by the time of trial in 2010[,] and was actively denying that he had ever spoken to police.

Additionally, in his police statement, Reid said that he believed the shooting occurred "[b]ecause of 5th Street and 7th Street. I'm from 5th Street[.]" (N.T., 12/8/15 vol. 2, p. 39). [Reid] subsequently disavowed this theory on the stand during Appellant's 2010 trial and claimed in his trial testimony that "I never had no problems from anybody from 7th Street[.]" (*Id.*) Nevertheless, **to the extent that Appellant wished to speculate that someone else shot Reid, there was plainly sufficient material available at the time of the 2010 trial to support that argument.** Moreover, by the time of the retrial in 2015, Reid had been shot a final time, fatally, and obviously by someone other than Appellant, who was in custody at the time and was never charged with any culpability in that crime.

\* \* \*

**Thus, Appellant cannot demonstrate that the non-disclosed material was actually "evidence," as opposed to the trial prosecutor's potentially inaccurate personal notes.** [Appellant] cannot prove that it was not already known to the defense at the time of trial, as the record indicates that Reid's criminal extract had been passed to the defense in court in its entirety and had been formally entered into the record as a court exhibit. [Appellant] cannot show that [the Commonwealth] incentivized Reid to testify against Appellant, because Reid's actual trial testimony was that he never saw who shot him. Finally, Appellant cannot establish that the absence of this material prejudiced the defense in any way, given that any "leads" that might have been suggested by the prosecutor's personal notes were already known to the defense through other avenues. For all these reasons, Appellant is not entitled to relief on this claim.

PCRA Court Opinion, 3/24/25, at 18-20 (footnote omitted; bold emphasis added; italicized emphasis in original; some citations modified).

We agree with the PCRA court's analysis and conclusion. Based on the foregoing, Appellant's fourth issue merits no relief.

In his fifth issue, Appellant argues that "the accumulation of" his purportedly meritorious "*Brady* and new fact claims compel[s] a remand" for an evidentiary hearing. Appellant's Brief at 45 (some capitalization modified). According to Appellant, "[t]his case was replete with instances of suppressed *Brady* material. In its misconduct and suppression of information, the Commonwealth denied [Appellant] a fair trial." Appellant's Reply Brief at 11. Appellant cites *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009), for the proposition that "PCRA claims can be accumulated to create prejudice." Appellant's Brief at 46 (citing *Johnson*, 966 A.2d at 532 (stating, in the context of claims of ineffective assistance of counsel, "if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation.")). Appellant urges that "even if this Court is not convinced that" his aforementioned individual claims of error "singly require a remand for an evidentiary hearing, then it is submitted that they do collectively." Appellant's Brief at 46.

Our Supreme Court has stated that "[w]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis." *Commonwealth v. Hutchinson*, 25 A.3d 277, 318-19 (Pa. 2011) (citation omitted). Additionally, "no number of failed

claims may collectively warrant relief if they fail to do so individually." ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1150 (Pa. 2012) (citation and brackets omitted). However, "[w]hen the failure of individual claims is grounded in lack of prejudice, … then the cumulative prejudice from those individual claims may properly be assessed." ***Commonwealth v. Koehler***, 36 A.3d 121, 161 (Pa. 2012).

Instantly, because we did not determine that any of Appellant's above-mentioned issues failed due to lack of prejudice, his "cumulative effect" claim merits no relief. ***Id.***; ***see also Commonwealth v. Lambert***, 884 A.2d 848, 857 (Pa. 2005) (stating that the "cumulative impact of meritless ***Brady*** claims cannot be grounds for relief.").

In his sixth issue, Appellant argues that "new evidence uncovered after [his filing of] the notice of appeal compels the grant of a remand[.]" Appellant's Brief at 47 (emphasis omitted; some capitalization modified). Specifically, Appellant references Judge DiClaudio's above-described ruling in Case 9469. ***Id.*** Moreover, Appellant attaches to his appellate brief a June 24, 2025, handwritten "certification" from Topping, an eyewitness to the Moore Street shooting, who identified Appellant as a perpetrator to police. ***Id.*** Ex. D. Topping, who was incarcerated in state prison at the time he executed his certification, stated that after the Moore Street shooting, Detective Tolliver interviewed him and employed inappropriate police practices. Specifically, Topping asserted Detective Tolliver detained him "for 3-4 days" and that

Topping "had no food until after [he] signed the statement" inculpating Appellant. Appellant's Brief Ex. D, at 1 (unpaginated). However, according to Topping, "I did not want to [give a statement] because I knew nothing about the shooting" and "I told [Detective Tolliver that] I was not there" at the scene of the Moore Street shooting. *Id.*

Like the filings in Case 9469, Appellant did not attach Topping's certification to his PCRA petition, nor is it included in the certified record. Accordingly, because Appellant did not attach this document to his PCRA petition, we are precluded from considering it in determining whether he established an exception to the PCRA's time-bar. *See Holley*, 945 A.2d at 246 (stating that for purposes of appellate review, what is not of record does not exist and that merely attaching copies of documents to an appellate brief does not make them a part of the certified record); Pa.R.A.P. 302(a) (providing that issues not raised before the lower court are waived and cannot be raised for the first time on appeal); *Commonwealth v. Burton*, 936 A.2d 521, 525 (Pa. Super. 2007) ("Exceptions to the time-bar must be pled in the PCRA petition, and may not be raised for the first time on appeal." (citations omitted)).

Additionally, in his appellate brief, Appellant fails to identify when he obtained Topping's certification. Rather, Appellant merely asserts that he "recently received" the certification. Appellant's Brief at 47. This failure precludes us from assessing whether Appellant invoked Topping's certification

- 37 -

"within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2); *Albrecht*, 994 A.2d at 1094. Appellant, who has long been aware of Topping, also fails to offer any explanation as to why Appellant could not have obtained Topping's certification earlier with the exercise of due diligence. *See Cox*, 146 A.3d at 227.

Finally, we observe that Topping's representations in his certification contradict his prior police statements. *See Campbell*, 301 A.3d 878 (unpublished memorandum at 15) (stating that "Topping, Reid's friend, [] witnessed the [Moore Street] shooting and identified [Appellant], by both name and picture, to police as one of the perpetrators." (citation omitted)). Our Supreme Court has stated that "[r]ecantation testimony is extremely unreliable. When the recantation involves an admission of perjury, it is the least reliable form of proof." *Commonwealth v. Henry*, 706 A.2d 313, 321 (Pa. 1997) (internal citations omitted); *see also Commonwealth v. Woods*, 575 A.2d 601, 603 (Pa. Super. 1990) (noting that "recantation testimony is highly suspect"). Thus, Appellant's issue fails for these reasons as well.

In his seventh and final issue, Appellant asserts the PCRA court improperly dismissed his PCRA petition without conducting an evidentiary hearing. *See* Appellant's Brief at 12-18. Appellant's claim consists entirely of summaries of his above-mentioned issues, *id.* at 12-14, along with legal authority pertaining to *Brady* claims and dismissal of PCRA petitions. *Id.* at 14-18.

This Court has recognized that

> [t]here is no absolute right to an evidentiary hearing on a [PCRA] petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. McCready*, 295 A.3d 292, 298 (Pa. Super. 2023) (citation omitted).

Because we have already determined that none of Appellant's claims satisfy any exception to the PCRA's jurisdictional time-bar, or entitle him to collateral relief, Appellant's final issue merits no relief. The PCRA court properly dismissed Appellant's petition without conducting an evidentiary hearing.

In conclusion, although Appellant asserts that the facts supporting his third PCRA petition were unknown to him and could not have been discovered through the exercise of due diligence, he failed to carry his burden to establish when he learned about these facts or that he raised the instant claims within one year of learning about them. Accordingly, because Appellant's petition is facially untimely, and he failed to establish any timeliness exception to the PCRA's jurisdictional time bar, the PCRA court lacked jurisdiction to consider his substantive claims and properly dismissed his petition. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2026